UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6293-CR-FERGUSON

UNITED STATES OF AMERICA, :

    Plaintiff, :

vs. :

MARION McCLEOD, :

    Defendant. :
_____/



## DEFENDANT'S UNOPPOSED MOTION FOR DOWNWARD DEPARTURE AND MEMORANDUM OF LAW

COMES NOW the defense and moves this court for a downward departure from the sentencing guidelines and in support thereof states:

This court has authority to depart in any case not falling within the "'heartland,' a set of typical cases embodying the conduct that each guideline describes" which were "carved out" by the Sentencing Commission. U.S.S.G. Introduction, p. 5, Ch. 1, Pt. A, § 4(b). "When the court finds an atypical case ... the court may consider whether a departure is authorized ... the Commission does not intend to limit the kinds of factors, whether or not mentioned elsewhere in the guidelines, that could constitute grounds for departure in the unusual case." *Id.* at 5-6.

Both Congress and the Sentencing Commission agreed that there would be times when various factors about a defendant would make a particular sentence inappropriate. Therefore, both Congress and the Sentencing Commission set out which factors, if substantially different in a case than in the normal or "heartland" case, should be considered as a bases for a downward departure

from the usually appropriate Guideline range. U.S.S.G. Introduction, p. 5, Ch. 1, Pt. A, § 4(b) and

18 U.S.C. § 3553(b). The Guidelines provide:

> The sentencing statute permits a court to depart from a guideline-specified sentence ... when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

U.S.S.G. § 1A4(b), quoting 18 U.S.C. § 3553. *See United States v. Ponder*, 963 F.2d 1506, 1509-10

(11th Cir. 1992) (Eleventh Circuit supported a departure "even if the circumstances presented by the

case vary only in degree from that presented by the guideline.").

The United States Supreme Court recently addressed the issue of guideline departures, in

*Koon v. United States*, 116 S. Ct. 2035 (1996). The Supreme Court's *Koon* decision clarified and

reemphasized that sentencing courts still have broad discretion to tailor appropriate sentences to the

facts of a case.

Reversing a Ninth Circuit decision which had struck down the downward departures in *Koon*,

the Supreme Court unanimously clarified that, from now on, departures should be reviewed on

appeal only for abuse of discretion. *Id.* at 2043.[1] This ruling represented a significant change in the

law of most Circuits, including this one. Prior to *Koon*, almost every Circuit had held that district

court decisions about whether a factor could be used as a valid legal basis for departure must be

reviewed *de novo*.

In *Koon*, the Supreme Court went out of its way to stress that its decision was designed to

---

[1] While there were some concurring opinions in *Koon*, all of the Justices joined in the portions of the opinion discussed here, concerning the appropriate standard of review and the need for sentencing judges to retain substantial departure discretion.

2

promote a view of the Sentencing Reform Act that retains much of the traditional sentencing discretion of district judges. While acknowledging the Sentencing Guidelines' goal of uniformity, Justice Kennedy explained:

> This too must be remembered, however. It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States District Judge. Discretion is reserved within the Sentencing Guidelines, and reflected by the standard of appellate review we adopt.

116 S. Ct. at 2053. In addition, "the text of § 3742 manifests an intent that district courts retain much of their traditional sentencing discretion." *Id.* at 2046. In fact, the Supreme Court stated that, unless the Commission itself had "proscribed, as a categorical matter, consideration of the factor," courts should not reject **any** factor as a possible ground for downward departure; rather, "the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." *Id.* at 2051.

In evaluating this "heartland," the Supreme Court cited the Guidelines' own acknowledgment that "the Commission did not adequately take into account cases that are, for one reason or another, **unusual**." *Id.* at 2044 (quoting U.S.S.G. ch. 1, pt. A, Intro. Comment 4(b)) (emphasis added). The Court described the expected process as follows: "A district judge now must impose on a defendant a sentence falling within the range of the applicable Guideline **if the case is an ordinary one.**" *Id.* at 2044. The focus thus should be on whether the facts of a case are "unusual" --or not "ordinary" --with a sentencing court still largely free to tailor an appropriate sentence through departure if the answer is yes. "The relevant question is not, as the Government says, whether a particular factor is

3

within the 'heartland' as a general proposition ... but whether the particular factor is within the heartland **given all the facts of the case.**" *Id.* at 2047. The Supreme Court explained that:

> The [Sentencing Reform] Act did not eliminate all of the district court's discretion, however. Acknowledging the **wisdom, even the necessity**, of sentencing procedures **that take into account individual circumstances**, 28 U.S.C. § 991(b)(1)(B), Congress allows district courts to depart from the applicable guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, **or to a degree**, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that **should** result in a sentence **different from that described.**"

116 S. Ct. at 2044 (quoting 18 U.S.C. § 3553 (b)). The Court emphasized that "[t]he Guidelines ... 'place essentially no limit on the number of potential factors that may warrant departure.'" *Id.* at 2051.

In *Koon*, the majority even upheld, as a valid basis for a downward departure under the facts of that case, the defendants' susceptibility to abuse in prison--a "discouraged factor" that the Commission had stated should not ordinarily be used as a basis for a downward departure. *Id.* at 2053. The Supreme Court also approved of departures based on an **aggregation of factors**, even if none of those factors, when considered alone, provided a sufficient basis to support a downward departure. *Id.* at 2053-54 (remanding for possible reimposition of downward departure despite recognition that district court had found none of the factors individually worthy of departure).

Consistent with *Koon*, the catch-all provision in U.S.S.G. § 5K2.0 authorized this Court generally to depart downward on grounds not specifically mentioned in the Guidelines, any time there exists a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission. U.S.S.G. § 5K2.0 ("Circumstances that may warrant

4

departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance").

## Downward Departure - Multitude of Factors Including
## Overrepresented Criminal History

### Facts

Marion McCleod delivered 2.24 grams of crack cocaine to an undercover officer. At the time of the offense Marion was an immature, 19 year old, diagnosed with a mental health disorder and a learning disability who possessed a ninth grade education and suffered from a substance abuse problem. The foregoing is documented in the PSI that was compiled in the instant matter.

The PSI concludes that Marion qualifies as a career offender as a result of two drug offenses that occurred when he was 16 and 18 years old respectively. The first offense, occurring in January of 1998, involved the allegation of a person known only as "Allain" who when approached by officers claimed Marion was selling crack. Subsequently, an officer allegedly observed Marion drop a small baggy of what turned out to be 1.9 grams of crack. Marion received a withheld adjudication and four years probation for this offense.

In October of 1999, Marion is alleged to have sold one crack rock to an undercover officer for $20.00. Marion received 6 months in the county jail for this offense. Marion also had an adult conviction for simple possession of cocaine in 1998 and received 60 days in the Broward County Jail. These offenses (and later violations of probation) and their proximity to the instant offense generate 10 criminal history points.

As a result of these offenses, Marion's guideline range was enhanced from a base offense level 20 to 32 and from a criminal history category of 5 to 6.

5

All of Marion's prior convictions are non-violent and involved very small amounts of crack cocaine. The present offense is similar in that it is non-violent and involves the small-time street peddling of one to two crack rocks on four occasions over a five month period of time. Assistant United States Attorney Bruce Brown does not oppose a downward departure in this case and leaves the extent of the departure to the Court.

## MEMORANDUM OF LAW

Section 4A1.3 of the Sentencing Guidelines addresses those cases in which a defendant's criminal history category does not accurately represent the defendant's criminal history. While this section is often used to increase a defendant's sentence, the guidelines make it clear that there also will be cases "where the court concludes that a defendant's criminal history **over-represents** the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3 (emphasis added). Section 4A1.3 expressly allows a district court to depart downward in such a scenario, based on the recognition that the rote calculation of a criminal history score "is unlikely to take into account all the variations in the seriousness of criminal history that may occur." U.S.S.G. § 4A1.3 (commentary).

Furthermore, a downward departure under § 4A1.3 is permissible for career offenders. United States v. Webb, 139 F.3d 1390, 1395 (11th Cir. 1998) citing United States v. Shoupe, 35 F.3d 835, 839 (3rd Cir. 1994) ("[w]here a defendant's offense level has been augmented by the career offender provision, a sentencing court may depart downward in both the criminal history and offense level categories under § 4A1.3") (emphasis added).

A downward departure based on overrepresented criminal history is warranted in Marion's case. As noted, his convictions are all non-violent and entail small street-level sales of contraband.

6

Further, his actions in the instant case are, likewise, non-violent street-level matters involving a small amount of contraband. Importantly, the prior offenses and the present conduct were committed between the ages of 16 and 19. In this regard, United States v. Senior, 935 F.2d 149, 151 (8th Cir. 1991) (young age when offenses committed and State's assessment of the seriousness of the crimes as reflected by length of sentences valid grounds for departure based on 4A1.3) is applicable.

Furthermore, the very fact that these are street level offenses involving small amounts of contraband are circumstances that support a downward departure. In United States v. Williams, 78 F.Supp. 2d 189 (Dist. Ct. N.Y. 1999) the district judge departed downward from the career offender guidelines based on 4A1.3 stating:

> In each of his prior convictions Williams was a street seller of narcotics-- the lowest level on the distribution chain. Not only did this make him the least significant member of the distribution chain, but it made him the person most likely to be arrested and convicted since he was out on the street where he could easily be observed and approached by the police. For this reason, his record of convictions should be considered less significant for sentencing purposes than that of others in the distribution chain who do not expose themselves so readily to the risk of arrest and conviction. To equate two or three convictions for street level sales of narcotics with two prior convictions for distributing wholesale quantities of narcotics would seriously over-represent the seriousness of the street seller's criminal history.
>
> It is also important to recognize that the street seller is the person in the distribution chain who can be most easily replaced by those who operate the distribution network. Unfortunately, there are a large number of addicts and others who are immediately available to replace the street seller who is carted off to jail. This not to say that street sellers should not be punished, but it does suggest that street sellers were not the type of offender who the Sentencing Commission pictured within the heartland of a 262-327 month guideline.

Id. at 193.

7

The description of the prior convictions of the defendant in <u>Williams</u> easily describes Marion McCleod's prior record.

There are a multitude of other factors that exist in Marion's case that warrant a departure. The PSI accurately reflects that Marion received psychological treatment at the Henderson Mental Health Center in 1997. There he was diagnosed with Dysthymia or Depressive Neurosis. (PSI paragraph 64.) The DSM-111R describes this disorder as a chronic disturbance of mood involving depression. Dysthymia has symptoms similar to Major Depression which differ only in duration and severity. See DSM-111R. Marion was prescribed medication for the disorder which his mother stated helped him, but discontinued its use because of its side effects. (PSI paragraph 65.) Marion stopped attending Henderson Mental Health Center because of the stigma associated with his attendance. (PSI paragraph 65.) Marion was also diagnosed with having a learning disability. (PSI paragraph 64.) These disorders appear to have had greatly limited Marion's ability to be successful at school. (PSI paragraphs 68-69.)

About the same time that Marion was attending Henderson Mental Health Center, he began to abuse alcohol and marijuana, using it daily. (PSI paragraph 66.) He also began to use cocaine. (PSI paragraph 67.) It should be noted that self-medication is common in individuals struggling with psychological disorders. Attempts were undertaken to deal with the substance abuse problems but they were unsuccessful. Most recently Marion was experimenting with ecstasy. (PSI paragraph 66.) It is important to note that the behavior that constitutes Marion's prior criminal history began during this time period of psychological disorder, self-medication and substance abuse.

Marion's history is strikingly similar to that of the defendant in <u>United States v. Smith</u>, 125 F.Supp. 2d 486 (Dist. Ct. Fla. 2000) where a downward departure was granted based on a

8

"confluence of circumstances." Id. at 491. A departure based on a combination of factors that take the case outside the heartland is contemplated both by the guidelines themselves in the commentary to § 5K2.0 and the case law. United States v. Mogel, 956 F.2d 1555, 1560 (11th Cir. 1992); United States v. Jones, 158 F.3d 492, 498-506 (10th Cir. 1988); United States v. Coleman, 188 F.3d 354, 361-62 (6th Cir. 1999).

In sum, in addition to the overrepresentation of the severity of Marion's criminal history (which standing alone is sufficient to support a departure) there is also a combination of other factors including age, psychological disorder, substance abuse problem and small-time street peddling nature of the offense, that operate in combination to support a downward departure in this case. Marion McCleod requests that the court so depart.

WHEREFORE, the defendant requests that this court grant this unopposed motion for a downward departure.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: _____
Timothy M. Day
Assistant Federal Public Defender
Florida Bar No. 360325
1 E. Broward Boulevard
Suite 1100
Fort Lauderdale, Florida 33301
(954) 356-7436
(954) 356-7556 (fax)

9

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed on this 27 day of July, 2001 to Bruce Brown, Esquire, United States Attorney's Office, 299 E. Broward Blvd., Fort Lauderdale, Florida 33301; Lynell Fahie, United States Probation Office, 300 N.E. 1st Avenue, Room 315, Miami, Florida 33132; Michael G. Smith, Esquire, 633 S.E. 3rd Avenue, Suite 4F, Fort Lauderdale, Florida 33301-3151; Howard L. Greitzer, Esquire, 600 N.E. 3rd Avenue, Fort Lauderdale, Florida 33304; David P. Hodge, Esquire, 727 N.E. 3rd Avenue, Fort Lauderdale, Florida 33304-2646; David J. Joffe, Esquire, 2900 Bridgeport Avenue, Suite 401, Miami, Florida 33133-3606; Richard F. Della Fera, Esquire, 200 E. Broward Blvd., Suite 1210, Fort Lauderdale, Florida 33301-1933 and to Leo Spitale, Esquire, 3191 Coral Way, Suite 619, Miami, Florida 33145.

Timothy M. Day

S:\DAY\McCleod\DEPART.1